[Docket Nos. 10, 11, 16]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| WILLINGBORO MUNICIPAL UTILITIES AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>SCHNEIDER ELECTRIC BUILDINGS AMERICAS, INC.,<br><br>Defendant. | Civil A. No. 25-cv-17101 (RMB/MJS)<br><br>**OPINION** |

**APPEARANCES:**

PECKAR & ABRAMSON, PC
Gerard J. Onorata, Esq.
70 Grand Avenue
River Edge, New Jersey 07661

*Attorney for Plaintiff*

TRIF & MONDUGNO LLC
Louis A. Modungo, Esq.
89 Headquarters Plaza
North Tower, Suite 1201
Morristown, New Jersey 07960

*Attorney for Defendant*

**RENÉE MARIE BUMB, Chief United States District Judge:**

This matter comes before the Court upon the Motion to Remand [Motion (Docket No. 11); Pl.'s Br. (Docket No. 11-1).] filed by Plaintiff Willingboro Municipal Utilities Authority ("Willingboro" or "Plaintiff"), and the Motion to Compel

Arbitration and Dismiss Plaintiff's Complaint [Motion and Memorandum (Docket No. 16).] filed by Defendant Schneider Electric Buildings Americas, Inc. ("Schneider" or "Defendant"). Defendant filed an Opposition to Plaintiff's Motion to Remand. [Def.'s Opp'n (Docket No. 15).] Plaintiff submitted a reply brief in further support of its Motion for Remand, and an Opposition to Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Complaint. [Pl.'s Reply and Opp'n (Docket No. 17).] For the reasons set forth below, Plaintiff's Motion will be **DENIED** without prejudice and Defendant's Motion will be **GRANTED**.

## I. FACTUAL BACKGROUND[1]

Plaintiff is a municipal utilities authority that provides water and sewer services to the Township of Willingboro, New Jersey. [Compl. ¶ 2.] Defendant is an Energy Services Company ("ESCO") that provides energy savings solutions to its clients. [*Id.* ¶ 6.]

### A. The November 2017 Request for Proposals

On or about November 22, 2017, Willingboro issued a Request for Proposals ("RFP") for interested and prequalified ESCOs to develop and implement an Energy Savings Improvement Program ("ESIP") for the Township of Willingboro. [*Id.* ¶ 6; RFP (Docket No. 1) at 63.] Interested parties were to submit a proposed Energy

[1] The factual background is derived from the Verified Complaint [Compl. (Docket No. 1) at 22-29] and exhibits to the Complaint. When deciding a motion to remand, courts assume as true "all factual allegations of the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

Savings Plan ("Proposal") for Willingboro's consideration. [RFP at 81.] Upon completion of the proposal phase, Willingboro would select an ESCO to perform the requested energy savings services, and the parties would "execute a final" agreement ("ESIP Agreement" or "Contract"). [*Id.*]

The RFP contained general instructions, details of the selection process, procedures regarding submission of proposals, the requested proposal format and contents, technical guidelines, terms and conditions, and a proposed ESIP Agreement. [RFP at 67–68.] The terms of the RFP required that each bidding ESCO attest to certain certified statements, and that such statements be made by "a person authorized to bind the Proposer." [*Id.* at 89.] One such attestation was: "Proposer has read and agrees to the terms and conditions set forth in the RFP." [*Id.*]

Section VII lays out the terms and conditions of the RFP. [*Id.* at 92.] Section VII begins with the following statement: "The following terms and conditions shall apply to the RFP process and the ESIP Agreement executed with the selected Proposer." [*Id.*]

Section VII, Paragraph 3 ("Modifications of RFP, Award, and ESIP Agreement") provides that "No modification of the RFP, scope of award or the resulting ESIP Agreement shall be binding upon the Authority unless duly approved in writing and signed by a duly authorized representative of the Authority." [*Id.*] Section VII, Paragraph 30 ("Governing Laws and Consent to Jurisdiction") states that:

> The ESIP Agreement shall be governed by the laws of the State of New Jersey. The successful Proposer shall agree that any action or proceeding that arises in any manner out of performance of the RFP or ESIP

> Agreement, shall be litigated in the Superior Court of New Jersey, Burlington County, State of New Jersey, and the Proposer shall consent and submit to the jurisdiction of the Superior Court.

[*Id.* at 101.] Under Section III of the RFP, which provides details regarding the selection process, "[i]f the Authority agrees to the terms and conditions of the awarded ESCO's proposal, the terms and conditions will be incorporated into the ESIP Agreement." [*Id.* at 82.]

**B. <u>Defendant's January 2018 Proposal</u>**

On January 11, 2018, Schneider, an interested ESCO, submitted its bid and proposed Energy Savings Plan ("Proposal") to Willingboro for consideration. [Proposal (Docket No. 1) at 136.] The following statements were authorized and signed by Tammy Fulop ("Fulop"), Vice President of Schneider. [Proposal at 137–38.] Schneider attested that it read and agreed to all of the terms in the RFP but withheld approval of the terms regarding insurance and liability. [*Id.*] Schneider attested that its corporate legal department required further negotiations regarding the insurance and liability portions of the terms and conditions. [*Id.*] Schneider did not identify that any further negotiations were needed regarding Paragraph 30 ("Governing Laws and Consent to Jurisdiction") in its Proposal. [*Id.*; RFP at 101.]

On or about June 20, 2018, Willingboro selected Schneider from the bidding process as its chosen ESCO. [Compl. ¶ 18.] About ten months later or about April 16, 2020, Schneider provided Willingboro with a final Energy Savings Plan. [*Id.* ¶ 19.]

### C. <u>The October 2020 Energy Savings Contract</u>

On October 1, 2020, the parties entered into an Energy Services Contract ("October 2020 Contract"). [Contract (Docket No. 1) at 143.] The Contract was signed by Willingboro representative, Executive Director Andrew Weber ("Weber"), and Schneider's representative, Vice President Fulop. [*Id.*] The parties agreed that Schneider would "provide and perform the energy conservation measures . . . set forth in the Contract Documents. . . subject to the terms and conditions set forth herein." [*Id.*] The parties agreed that Schneider would complete the project in two phases. [Compl. ¶ 20.] The first phase included a Water Meter Infrastructure Project, and the second phase included the implementation of an Energy Savings and Capital Improvement Plan. [*Id.*] In this second phase, Schneider would "replace certain aging and failed equipment at [Willingboro's] Pollution Control Plant." [Demand for Arbitration (Docket No. 1) at 156.]

The Contract includes, the "Terms and Conditions of Implementation Portion of Contract". [Contract at 145.] Article 5.1 on "Dispute Resolution," states, in relevant part:

> To the extent allowed by applicable law, any controversy or claim arising out of or relating to this Contract, or Contract Documents, or any breach thereof, shall be settled by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

[*Id.* at 147.]

Article 13.6, under "Other Conditions or Provisions" states "[t]his Contract sets forth the entire understanding between the parties and supersedes all prior oral or written understandings relating to the subject matter herein. This Contract may not be altered or modified except by a written instrument signed by a duly authorized representative of each party." [*Id.* at 150 (emphasis added).]

At the time of filing the Complaint, the parties were in Phase 2 of the project. [Compl. ¶ 20.] During this second phase, Schneider encountered delays in its ability to perform the work promised. [*Id.* ¶¶ 25–26.] These delays began on or about January 7, 2021. [Demand for Arbitration at 157.] The parties dispute who is at fault for the delays, but Schneider alleges that its work was delayed by 1,374 days due to Willingboro's failure to secure the necessary approvals and permits needed for the project to continue. [*Id.* at 156–58.]

## II. PROCEDURAL HISTORY

Based upon these facts, on October 15, 2025, Schneider filed a Demand for Arbitration with the American Arbitration Association ("AAA"). [Compl. ¶ 29; Demand for Arbitration at 154.] The Demand for Arbitration identifies the nature of the dispute as a claim for equitable adjustment. [Demand for Arbitration at 153.] Schneider claims damages amounting to $6,818,725.00, plus attorneys' fees, interest, and arbitration costs. [Compl. ¶ 27; Demand for Arbitration at 158.]

In response to the arbitration demand, on October 27, 2025, Willingboro filed suit against Schneider in the Superior Court of New Jersey, Law Division, Burlington County. [Compl.] The Complaint sets forth one count against Schneider requesting

a temporary and permanent enjoining of the arbitration. [*Id.* ¶¶ 5–34]. The same day, Willingboro filed a request for a Temporary Restraining Order to Stay Arbitration. [Docket No. 1 at 30–60.]

On October 30, 2025, Civil Presiding Judge Eric G. Fikry filed an Order to Show Cause requiring Defendant Schneider to respond to Plaintiff's request to enjoin arbitration. [Docket No. 1 at 18–21.] On October 31, 2025, Defendant Schneider removed this case to federal court on the basis of diversity jurisdiction. [Notice of Removal (Docket No. 1) ¶¶ 21–26.] On January 9, 2026, Willingboro filed a Motion to Remand. [Docket No. 11.] On January 30, 2026, Schneider filed its Brief in Opposition to the Motion to Remand. [Def.'s Opp'n.] The same day, Schneider filed its Motion to Compel Arbitration. [Motion and Memorandum.] On February 6, 2026, Willingboro filed a Reply Brief in Further Support of its Motion to Remand, and an Opposition to Defendant's Motion to Compel Arbitration. [Pl.'s Reply and Opp'n.]

The briefing is now complete, and the motions are ripe for decision.

## III. LEGAL STANDARD

### A. <u>Motion to Compel Arbitration</u>

The Federal Arbitration Act ("FAA") reflects a "strong federal policy in favor of the resolution of disputes through arbitration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l., L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). This presumption in favor of arbitration, however, "does not apply to the determination of whether there is a valid agreement to arbitrate

between the parties." *Id.* (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). Indeed, courts, rather than arbitrators, must fulfill the "gatekeeping function" in this respect. *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 398 (3d Cir. 2020) (citing *Sandvik AB v. Advent Int'l. Corp.*, 220 F.3d 99, 107 (3d Cir. 2000)). Because arbitration is a matter of contract, if no such agreement exists, courts cannot mandate that the parties arbitrate. *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219–20 (3d Cir. 2014) (citing *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999)); *see also MZM Constr.*, 974 F.3d at 401 ("[I]t can hardly be said that contracting parties clearly and unmistakably agreed to have an arbitrator decide the existence of an arbitration agreement when one of the parties has put the existence of that very agreement in dispute.").

Thus, in deciding a motion to compel arbitration, a court must first determine (1) whether a valid agreement to arbitrate exists and, if so, (2) whether the dispute falls within the agreement's scope. *Flintkote*, 769 F.3d at 220 (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 527 (3d Cir. 2009)). "[W]hen the very existence of such an agreement is disputed," any motion to compel arbitration should not be decided until the court "resolves the threshold question of whether the arbitration agreement exists." *Sandvik*, 220 F.3d at 112.

In accordance with these principles, the standard for the resolution of a motion to compel arbitration depends on the facial clarity of arbitrability. "[W]hen it is apparent, based on 'the face of the complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration

clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'"[2] *Guidotti v. Leg. Helpers Debt ADR, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting S*omerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). Further, even where an agreement to arbitrate is not explicitly mentioned on the face of the complaint and is not attached as an exhibit to the complaint, a court may properly consider the agreement under Rule 12(b)(6) if it is integral to or explicitly relied upon in the complaint or has been incorporated by reference into the complaint based on a plaintiff's allegations. *See, e.g., CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014); *George v. Midland Funding, LLC*, 2019 WL 2591163, at *3 (D.N.J. June 25, 2019); *Stacy v. Tata Consultancy Servs., Ltd.*, 2019 WL 1233081, at *5 (D.N.J. Mar. 14, 2019). For example, some courts in this Circuit have found an arbitration agreement to be incorporated by reference in a complaint where the underlying claims are based on agreements that contain the disputed arbitration provisions or where the

[2] Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint if the plaintiff fails to state a claim upon which relief may be granted. "A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014). Courts will dismiss a complaint if the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts will not accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

complaint references an agreement that contains the arbitration provision. *See CardioNet, Inc.*, 751 F.3d at 168 n.2; *George*, 2019 WL 2591163, at *3.

It is inappropriate to consider a motion to compel arbitration under a Rule 12(b)(6) standard when either the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue. *Guidotti*, 716 F.3d at 776. In that case, "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question'" under a Rule 56 summary judgment standard.[3] *Id.*

**B. <u>Motion to Remand</u>**

In addition to opposing the motion to compel arbitration, Plaintiff has moved to remand this action back to state court. Federal courts must always ensure they have jurisdiction over a dispute. *Ibrahim v. Wells Fargo Bank, N.A.*, 2020 WL 4251477, at *1

[3] Courts must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. *Id.* To prevail on a summary judgment motion, the moving party must show the nonmovant cannot establish one or more essential elements of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial,' then summary judgment is appropriate for the moving party." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (alterations in original) (quoting *Celotex*, 477 U.S. at 322).

(D.N.J. July 24, 2020) ("Federal courts are courts of limited jurisdiction and have an obligation to establish subject matter jurisdiction . . ..") (citing *Liberty Mut. Ins. Co. v. Ward Trucking Co.*, 48 F.3d 742, 750 (3d Cir. 1995)).

28 U.S.C. § 1441(a) allows a defendant to remove an action filed in a state court to a federal court that would have had original jurisdiction over the action. Federal courts have original jurisdiction over lawsuits presenting a federal question—that is, the plaintiff's claims arise under federal law, 28 U.S.C. § 1331—or lawsuits among diverse citizens—meaning, lawsuits involving citizens from different states where the amount of controversy exceeds $75,000. 28 U.S.C. § 1332. When a plaintiff moves for a remand to state court, the removing party must show removal was proper. *Stephens v. Gentilello*, 853 F. Supp. 2d 462, 465 (D.N.J. 2012) ("As the party removing the case, the defendant has the burden to prove that federal court jurisdiction is proper at all stages of the litigation."). "Removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *City of Hoboken v. Exxon Mobil Corp.*, 558 F. Supp. 3d 191, 198 (D.N.J. 2021) (quoting *Batoff v. State Farm Ins.,* 977 F.2d 848, 851 (3d Cir. 1992)). When deciding a motion to remand, courts assume as true "all factual allegations of the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

## IV. DISCUSSION

Because the parties do not dispute the validity of the RFP or the October 2020 Contract, the Court will assess the Motions under a Rule 12(b)(6) standard. As noted,

the RFP and Contract are attached as exhibits to the Complaint, and Schneider's Proposal and Demand for Arbitration are explicitly relied upon in the Complaint. [Compl. ¶¶ 6–20, 29.] The Court considers no other documents in resolving these Motions. *Affordable Dentures–Audubon, Michelle Aitken, DDS, P.A. v. Affordable Care, LLC*, 2018 WL 2134037, at *7 (D.N.J. May 9, 2018) (considering only pleading and exhibits in deciding motion to compel arbitration); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

In determining whether to either compel arbitration or remand this case back to state court, the Court must first determine which document controls: the November 2017 RFP or the October 2020 Contract. Willingboro alleges that the earlier-in-time RFP governs the dispute, while Schneider argues that the later-in-time October 2020 Contract governs.

### A. The October 2020 Contract Controls

A defendant may contractually waive its right to remove an action brought in state court through a forum selection clause. *New Jersey v. Merrill Lynch & Co.*, 640 F.3d 545, 547 (3d Cir. 2011) (internal quotation marks omitted). In such a case, "remand based on a [valid] forum selection clause is lawful." *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1215 (3d Cir. 1991); *Marigliano v. ABC Fin. Servs., Inc.*, 2025 WL 1587987, at *2 (D.N.J. June 5, 2025). A forum selection clause permits parties to contractually waive litigating in certain court jurisdictions and instead choose a mandatory forum

where all litigation stemming from the contractual relationship must be filed. *Travelers Prop. Cas. Co. of Am. v. HES Trans. Inc.*, 2019 WL 7116153, at *4 (N.J. Super. Ct. App. Div. Dec. 23, 2019) ("Under both New Jersey and federal law, jurisdictional clauses in contractual agreements are considered presumptively valid and enforceable. In New Jersey, such provisions are enforceable absent fraud, strong countervailing public policy, or if it would 'seriously inconvenience trial.'") By contrast, an arbitration clause permits contracting parties to agree to submit to arbitration and waive their rights to litigate disputes in court. FAA, 9 U.S.C. § 2. Such arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* If a court is "satisfied that the making of the agreement for arbitration . . . is not in issue," it must direct the parties to proceed to arbitration. *Id.* § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that [they] do so." *Bel-Ray Co.*, 181 F.3d at 444.

In determining whether parties have contractually waived the right to remove to federal court or have agreed to arbitration, the Court applies ordinary principles of contract law. *Merrill Lynch & Co.,* 640 F.3d at 548 (quoting *Foster*, 933 F.2d at 1217 n.15) ("[A] court should 'simply . . . us[e] the same benchmarks of construction and, if applicable, interpretation as it employs in resolving all preliminary contractual questions.'"); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) ("[It is a] fundamental principle that arbitration is a matter of contract."). Therefore, a court interpreting competing clauses applies principles of contract law to determine the scope and control of either clause. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 180–81 (3d

Cir. 2017). Issues of contract interpretation are considered substantive rather than procedural for purposes of *Erie*. *Id.* at 182–83 (interpreting *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938)). Therefore, as a general rule in diversity cases, courts apply state contract law to decide contract interpretation questions. *Id.* at 183. Accordingly, because this Court sits in diversity and neither party disputes that New Jersey law governs the agreements, the Court applies New Jersey contract law.

Under New Jersey law, courts seek to enforce contracts as the parties intended, based on the common intention of the parties. *Pacifico v. Pacifico*, 920 A.2d 73, 77 (N.J. 2007). When interpreting the terms of a contract, the Court must read the contractual terms in their "plain and ordinary meaning." *Boyle v. Huff*, 314 A.3d 793, 799 (N.J. 2024). When "the language of a contract 'is plain and capable of legal construction, the language alone must determine the agreement's force and effect.'" *Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 958–59 (N.J. 2014) (quoting *Twp. of White v. Castle Ridge Dev. Corp.*, 16 A.3d 399, 403 (N.J. Super. Ct. App. Div. 2011)); *Capparelli v. Lopatin*, 212 A.3d 979, 992 (N.J. Super. Ct. App. Div. 2019) ("[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.") A court "must consider contractual language in the context of the circumstances at the time of drafting and . . . apply a rational meaning in keeping with the expressed general purpose. [I]f the contract into which the parties have entered is clear, then it must be enforced as written." *Serico v. Rothberg*, 189 A.3d 343, 350 (N.J. 2018) (alterations in original) (quoting *In re County of Atlantic*, 166 A.3d 1112, 1122 (N.J. 2017)).

Parties may include integration or merger clauses in their agreements, which is language that expressly clarifies their intent that a written agreement constitutes the final and complete understanding between the parties.[4] *Chance v. McCann*, 966 A.2d 29, 41 n.6 (N.J. Super. Ct. App. Div. 2009). Generally, New Jersey courts prohibit the introduction of evidence that tends to alter the terms of an integrated written document, which is typically referred to as the parol evidence rule. *Conway v. 287 Corp. Ctr. Assocs.*, 901 A.2d 341, 346 (N.J. 2006). However, prior to prohibiting the introduction of parol evidence, the Court must determine the preliminary matter of whether an integrated agreement actually exists. *Chance*, 966 A.2d at 41 n.6. When determining if an integrated document exists, New Jersey law "permit[s] a broad use of extrinsic evidence to achieve the ultimate goal of discovering the intent of the parties," to determine if the agreement is validly integrated. *Conway*, 901 A.2d at 347.[5] For example, courts in this District have found an agreement to be integrated where there was express language "explicitly nullifying any previous agreements, oral or written [and] … when the parties to the contract [were] 'particularly experienced,

---

[4]"An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement." Restatement (Second) of Contracts § 209 (A.L.I. 1981).

[5] When interpreting contract language, "[t]he polestar of construction is the intention of the parties as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded." *Conway v. 287 Corp. Ctr. Assocs.*, 901 A.2d 341, 347 (N.J. 2006) (*citing Atl. N. Airlines v. Schwimmer*, 96 A.2d 652, 656 (N.J. 1953)).

knowledgeable business people.'" *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 454 (D.N.J. 2012) (*citing Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 436 (D.N.J. 1998)).[6] Once a court determines that there is a completely integrated agreement, then the parol evidence rule will bar the introduction of extrinsic evidence to vary the terms of the contract. *Conway*, 901 A.2d at 346–47. Thus, prior oral or written understandings may not be used to vary or contradict the terms of a fully integrated document. *Id.*

However, even when a contract does not contain a merger clause, under New Jersey law, a later-in-time contract supersedes an earlier contract and becomes the only agreement on the part of the parties on the subject matter if the later contract "concern[s] 'the same subject matter' and the later agreement is so 'inconsistent' with the former 'that the two cannot stand together.'" *Field Intel. Inc. v. Xylem Dewatering Sols. Inc.*, 49 F.4th 351, 358 (3d Cir. 2022) (quoting *Rosenberg v. D. Kaltman & Co.*, 101 A.2d 94, 96 (N.J. Ch. 1953)); *see also Haffert v. Bell Tower Condo. Ass'n.*, 2026 WL

---

[6] In *Rezac v. JMK Auto Sales, Inc.*, the Court found that an earlier contract was explicitly superseded by an "unequivocal" merger clause, which stated: "[t]his lease describes all agreements between us with respect to the Lease of the Vehicle[; all] prior agreements, whether oral or in writing, are superseded." 2013 WL 1907739, at *4 (N.J. Super. Ct. App. Div. May 9, 2013). In *Borough of Atl. Highlands v. Eagle Enters., Inc.*, the Court was "at a loss as to how [it] might interpret this unambiguous language to mean anything other than that the original construction contract was to be regarded as history." 711 A.2d 407, 410 (N.J. Super. Ct. App. Div. 1998) (interpreting "[T]he parties agree that [the] Contract is completed and this Agreement constitutes full and final satisfaction of all claims for compensation and neither party has any further claims for compensation or damages against the other.") (alterations in original).

682265, at *5 (N.J. Super. Ct. App. Div. Mar. 11, 2026). In *Field Intel. Inc.*, for example, the Third Circuit found that the two contracts did not cover the same subject matter where the first contract was a "Non-Disclosure Agreement" which governed the disclosure and protection of certain information, while the second was a "Software Subscription Service Agreement," which allowed one party to access the software of another for a monthly fee. 49 F.4th at 354. However, when the later-in-time contract does contain a merger clause, a court may treat the merger clause as strong evidence of the parties' intent to integrate the documents. *Pearson v. Valeant Pharms. Int'l, Inc.*, 2017 WL 6508358, at *5 (D.N.J. Dec. 20, 2017). Applying the same principles of contract interpretation, a later agreement containing an unambiguous integration clause may supersede an earlier forum-selection provision where the agreements cover the same subject matter and cannot be reasonably reconciled. *See id.*; *see also Field Intel. Inc.,* 49 F.4th at 358.

Applying these principles in the present case, the Court concludes that the October 2020 Contract contains a merger clause. [Contract at 150.] The merger clause states: "[t]his Contract sets forth the entire understanding between the parties and supersedes all prior oral or written understandings relating to the subject matter herein." [*Id.*] Indeed, the Superior Court of New Jersey, Appellate Division has analyzed provisions with almost similar language before, finding that such language is unequivocal. *See Rezac v. JMK Auto Sales, Inc.*, 2013 WL 1907739, at *4 (N.J. Super. Ct. App. Div. May 9, 2013) ("All prior agreements, whether oral or in writing, are

superseded."); *see also Borough of Atl. Highlands*, 711 A.2d at 410 ("[The] Contract is completed and this Agreement constitutes full and final satisfaction of all claims.").

Here, the language used in the merger clause, in its plain and ordinary meaning, demonstrates that it was the intention of the parties to integrate the contracts such that the later contract represents the full and final understanding between the parties. The terms "all prior oral or *written* understandings relating to the subject matter herein," in their plain and ordinary meaning, would include the November 2017 RFP. [Contract at 150 (emphasis added).] The RFP was a prior understanding between the parties directly related to the subject matter of the Contract. The RFP contained terms and conditions that would apply to the future agreement for services between the parties and gave instructions on how an ESCO could obtain the final ESIP Agreement. [RFP at 92–102.] Thus, it is clear that the parties intended for the two documents to concern the same subject matter. [*Id.*] Therefore, the RFP would fall within the scope of the merger clause. [Contract at 150.] The language in the clause explicitly nullifies the prior written agreements, and states that the entire understanding between the parties was to be governed by the October 2020 Contract, which includes the forum for dispute resolution. [*Id.*] Additionally, the Contract was effectuated by indisputably "particularly experienced, knowledgeable business people," which this District has found weighs in favor of finding the merger clause valid. *RNC Sys. Inc.*, 861 F. Supp. 2d at 454. The Contract was signed by the Executive Director of Willingboro Municipal Utilities Authority, and the Vice President of Schneider Electric Buildings

Americas, Inc., and the parties do not suggest that the parties who signed the Contract were not experienced and knowledgeable. [Contract at 143.]

The extrinsic evidence further supports this finding.[7] At the time the terms of the RFP were attested to, the parties were still in the negotiation stage. [Compl. ¶¶ 6–7.] The RFP was a "request" for proposals which Schneider was not involved in drafting. [RFP at 65–66.] Schneider's proposal, while it included attestations to some of the terms in the RFP, was a "proposal" and thus not yet accepted by Willingboro. [Proposal at 136.] The RFP provided that upon review and approval of the Proposal and Energy Savings Plan, the parties would *then* "execute a final ESIP Agreement." [RFP at 81.] This language, in its plain and ordinary meaning, suggests that the parties intended the later ESIP Agreement to be the final understanding of the contractual terms between the parties. The titles of the documents being "Request" and "Proposal" also suggest that the documents were not yet a final understanding between the parties. The RFP also allowed for modifications to "the RFP, scope of award or the resulting ESIP Agreement . . . [when] duly approved in writing and signed by a duly authorized representative of the Authority." [*Id.* at 92.] The Contract modified the terms of the RFP, in that they are inconsistent, but the Contract was signed by Willingboro representative, Executive Director Weber. [Contract at 143.] By signing

[7] Under New Jersey law, a court may "broad[ly] use . . . extrinsic evidence to achieve the ultimate goal of discovering the intent of the parties" to determine if the agreement is validly integrated. *Conway*, 901 A.2d at 347 (citing *Atl. N. Airlines*, 96 A.2d at 656).

and agreeing to the terms included in the Contract, Willingboro had agreed to the modifications.[8] *Serico*, 189 A.3d at 350.

The Court's conclusion is further supported by New Jersey caselaw, which holds that a later-in-time contract will supersede an earlier contract and become the only agreement between the parties on the subject matter if the later contract covers the same subject matter made by the same parties, but "the later agreement is so 'inconsistent' with the former 'that the two cannot stand together.'" *Field Intel. Inc.*, 49 F.4th at 358 (quoting *Rosenberg,* 101 A.2d at 96). As explained, it is clear that the two contracts involve the same subject matter. This case is distinguishable from *Field Intel*, where the Third Circuit found that the two contracts did not cover the same subject matter when one was a Non-Disclosure Agreement, and the other was a Software Subscription Service Agreement. 49 F.4th at 354. The Court is satisfied that the 2017 RFP and the 2020 Contract conflict to such a degree "that the two cannot stand together." *Rosenberg*, 101 A.2d at 96. The RFP, Proposal, and Contract all discuss the same subject matter—the energy savings work to be completed by

---

[8] Nothing is before the Court to suggest that the Willingboro representative was under duress at the time of signing the Contract, which would make the Contract void and unenforceable. Under New Jersey law, the test for duress is "essentially subjective." *Rubenstein v. Rubenstein*, 120 A.2d 11, 14 (N.J. 1956) ("[T]he test of duress is not so much the means by which the party was compelled to execute the contract as it is the state of mind induced by the means employed—the fear which made it impossible for him to exercise his own free will." (citation modified)). However, the conduct giving rise to duress must also be wrongful. *Cont'l Bank of Pa. v. Barclay Riding Acad., Inc.,* 459 A.2d 1163, 1175 (N.J. 1983) ("[T]he term 'wrongful' in [the context of duress in contracts] encompasses more than criminal or tortious acts . . . for conduct may be legal but still oppressive." (citation modified)). Here, none of the facts presented meet this burden.

Schneider for Willingboro. *See generally* [RFP, Proposal, and Contract at 63–150.] Thus, the record demonstrates that it was the intention of the parties that the October 2020 Contract be the final binding agreement between the parties on the subject matter.[9]

### B. The Arbitration Clause is Enforceable

It is the Court's finding that the arbitration clause is valid, and that the dispute falls within the scope of the agreement. Thus, the arbitration clause is enforceable.

"Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co.*, 584 F.3d at 523. Whether the

[9] In its briefing, Willingboro argues that Schneider made "misrepresentations," and that such conduct should "prohibit the Court from compelling Willingboro to arbitrate." [Pl.'s Reply and Opp'n at 11.] In the event that it seeks to establish a fraud claim, these allegations are not included in the verified Complaint and are merely alluded to in its Reply Brief on Motion to Remand. Although the Court notes it may refuse to consider arguments first raised in a reply memorandum, *Premier Comp. Solutions, LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) (internal citations omitted), the Court will consider Plaintiff's argument raised in its reply. To establish a claim of fraudulent inducement, a plaintiff must plead the following: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (citing *Metex Mfg. Corp. v. Manson*, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008)). To establish a claim of fraudulent misrepresentation, a plaintiff must plead virtually the same set of elements. *See Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 610 (1997) (explaining that a plaintiff must prove: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."). In either instance, Plaintiff fails to plead any of the above elements and lacks factual support.

parties entered into a valid agreement to arbitrate is determined under "state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, "'federal law applies to the interpretation of arbitration agreements,' [therefore,] once a court has found that there is a valid agreement to arbitrate, regardless of whether the action is in a federal or a state court[,] the determination of whether 'a particular dispute is within the class of those disputes governed by the arbitration clause . . . is a matter of federal law.'" *Century Indem. Co.,* 584 F.3d at 524 (quoting *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003)).

To determine if a valid arbitration clause exists between the parties, New Jersey law provides that "[a]n agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" *Atalese v. U.S. Leg. Servs. Group, L.P.*, 99 A.3d 306, 312–13 (N.J. 2014) (quoting *NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp.*, 24 A.3d 777, 790 (N.J. Super. Ct. App. Div. 2011)); *see also Skuse v. Pfizer, Inc.*, 236 A.3d 939, 949–50 (N.J. 2020). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." *Atalese*, 99 A.3d at 313. Finally, "because arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" *Id.* (citing *Foulke Mgmt. Corp.*, 24 A.3d at 791). Any arbitration provision "must reflect that [the party] has agreed clearly and unambiguously to its terms." *Id.* (alteration in original) (citing *Leodori v. CIGNA Corp.*,

814 A.2d 1098, 1104 (N.J. 2003)); *see also Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 773 A.2d 665, 670 (N.J. 2001) ("[A clause] depriving a citizen of access to the courts should clearly state its purpose. The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." (citation modified)). However, "[n]o particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." *Atalese,* 99 A.3d at 314.

The New Jersey Supreme Court held in *Atalese* that "the absence of *any* language in the arbitration provision that [a party waived its] statutory right to seek relief in a court of law renders the provision unenforceable." 99 A.3d at 309. The New Jersey Supreme Court reasoned that this language was necessary because "parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." *Id.* at 315. However, the Third Circuit has recognized that the New Jersey Supreme Court adopted the stricter approach found in *Atalese* "only in the context of employment and consumer contracts." *In re Remicade (Direct Purchaser) Antitrust Litig.,* 938 F.3d 515, 525 (3d Cir. 2019). The New Jersey Appellate Court later clarified that the express language signaling a waiver of statutory rights to litigate in court was not necessary for commercial contracts where the parties "are sophisticated and possess comparatively equal bargaining power." *County of Passaic v. Horizon Healthcare Servs., Inc.*, 289 A.3d 495, 504 (N.J. Super. Ct. App. Div. 2023); *see also Boger v. IdeaVillage Products Corp.*, 2025 WL 3059694, at *7 (N.J. Super. Ct. App. Div. Nov. 3, 2025)

(clarifying that the holding in *Atalese* was "driven by the nature of the underlying consumer contract"). Thus, courts have declined to apply the rule from *Atalese,* that an explicit waiver is required in arbitration provisions, to commercial contracts between sophisticated parties who possess equal bargaining power. *See Atalese*, 99 A.3d at 309; *see also County of Passaic,* 289 A.3d at 497 ("[E]ven though the arbitration provision does lack such an explicit waiver, the County is a sophisticated contracting party and is not—as in *Atalese* and other authorities—an employee or consumer lacking sufficient bargaining power to resist the extraction of an agreement to arbitrate.")

To determine whether the dispute at issue falls within the scope of the arbitration provision, under federal law, there is a presumption in favor of arbitrability, and any "doubts should be resolved in favor of coverage." *Century Indem. Co.*, 584 F.3d at 524 (quoting *AT&T Techs.*, *Inc. v. Commc'n. Workers of Am.*, 475 U.S. 643, 650 (1986)); *see also Moses H. Cone Meml. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.") This "presumption is particularly applicable where the [arbitration] clause is . . . broad." *AT&T Techs.*, 475 U.S. at 650. Therefore, "a court may not deny a motion to compel arbitration 'unless it may be said with positive assurance that the . . . arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Cup v.*

*Ampco Pittsburgh Corp.*, 903 F.3d 58, 64–65 (3d Cir. 2018) (quoting *AT&T Techs.*, 475 U.S. at 650).

Here, the October 2020 Contract expressly and conspicuously contains an agreement to arbitrate. [Contract at 147.] Article 5.1 on "Dispute Resolution," states, in relevant part: "To the extent allowed by applicable law, any controversy or claim arising out of or relating to this Contract, or Contract Documents, or any breach thereof, shall be settled by binding arbitration." [*Id.*] The clause is distinctly labeled "Dispute Resolution" in bold lettering, has an increased font size, and is in all capital letters. [*Id.*] The clause clearly advises that the parties are agreeing to binding arbitration. [*Id.*] Although the clause does not explicitly warn that the parties are waiving their rights to seek relief in court, the parties were sophisticated and possessed comparatively equal bargaining power. [*Id.*] The Contract was signed by Willingboro representative, Executive Director Weber, and Schneider representative, Vice President Fulop. [*Id.* at 143.] The Court assumes, and the parties do not dispute, that they have experience in business dealings and would understand that there is a "distinction between resolving a dispute in arbitration and in a judicial forum." *Atalese*, 99 A.3d at 315. The language in the arbitration provision declares that any controversy or claim arising from the Contract "shall be settled by binding arbitration." [Contract at 147.] The contract language is definitive and clearly states its purpose unambiguously. *Id.* The Court finds that the parties agreed to arbitrate, and that the arbitration clause is written in plain language that would be clear and understandable to similarly situated sophisticated parties.

The dispute also plainly falls within the scope of the arbitration clause, which broadly covers "any controversy or claim arising out of or relating to this Contract, or Contract Documents, or any breach thereof." [Contract at 147.] As the Supreme Court has ruled, there is a presumption that the dispute at issue is arbitrable when the clause is particularly broad. *AT&T Techs.*, 475 U.S. at 650. The dispute here involves a claim by Schneider for equitable adjustment, arguing that Willingboro failed to secure the necessary approvals and permits needed for the project to continue. [Demand for Arbitration at 153, 156–58.] This alleged breach began on or around January 7, 2021. [*Id.* at 157.] This dispute stems from the conduct that occurred after the October 2020 Contract was signed and is directly relevant to the scope of work promised by the Contract. [Contract at 145.] Thus, the dispute at issue is arbitrable under the Contract.

**C. <u>Defendant Did Not Waive its Right to Arbitration</u>**

In its Opposition, Willingboro argues that Schneider waived its right to seek arbitration, and thus the Motion to Compel should be denied. [Pl.'s Reply and Opp'n at 10.] For the reasons set forth below, the Court disagrees.

In *Morgan v. Sundance, Inc.*, the United States Supreme Court scrapped the arbitration-specific rule, previously applied by the Third Circuit and several other Circuits, requiring a party opposing arbitration to demonstrate prejudice before a contractual right to arbitrate could be deemed waived. 596 U.S. 411, 417 (2022). In doing so, the *Morgan* Court explained federal courts cannot "create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's

'policy favoring arbitration.'" *Id.* (quoting *Moses H. Cone Meml. Hosp.*, 460 U.S. at 24); *see also Laguna v. Chester Housing Auth.*, 662 F. Supp. 3d 545, 547 (E.D. Pa. 2023) ("Courts must assess the enforceability of arbitration provisions in contracts the same as any other contract."). The *Morgan* Court went onto explain that waiver occurs where a party "intentional[ly] relinquish[es] or abandon[s] . . . a known right." 596 U.S. at 417 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)); *see also White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023).

In compliance with the principles of contract law, "the right to arbitrate may be waived either explicitly or through an implicit course of conduct." *Valli v. Avis Budget Grp. Inc.*, 162 F.4th 396, 405 (3d Cir. 2025) (citing *Toddle Inn Franchising, LLC v. KPJ Assocs., LLC*, 8 F.4th 56, 64 (1st Cir. 2021)). In the absence of an explicit waiver, to determine "whether waiver has occurred, a court focuses on the actions of the p[arty] who held the right and is informed by the circumstances and context of each case." *White*, 61 F.4th at 339–40 (alteration in original) (internal quotation marks, citations, and footnotes omitted). Said another way, courts should determine whether the party asserting the right to arbitrate "knowingly relinquish[ed] [it] by acting inconsistently with that right[.]" *Morgan*, 596 U.S. at 419. When discerning if a party implicitly waived its right to arbitration, the Court should make inferences drawn from litigation conduct. *Valli,* 162 F.4th at 409. When the party compelling arbitration "consistently and explicitly states on the record that it *does* intend to invoke arbitration, there is no uncertainty to resolve by inference and the predicate for implied waiver largely

collapses." *Id.* at 410. In *Valli,* the Third Circuit further held that a party cannot waive its right to arbitrate until it is on notice that the dispute could be subject to arbitration. *Id.* at 408 (citing *White*, 61 F.4th at 340). At least one district court within the Third Circuit has interpreted *Valli* as indicating that "the waiver inquiry begins from the adoption of the arbitration provision." *Greystone Mortg., Inc. v. Equifax Workforce Sols. LLC*, 820 F. Supp. 3d 353, 372 n.16 (E.D. Pa. 2026).

Here, in view of the "circumstances and context" of the case, Schneider did not intentionally relinquish or waive its known right to arbitrate. *White*, 61 F.4th at 339. Schneider's conduct throughout litigation demonstrates it has affirmatively upheld its right to arbitrate. Schneider did not file a case in state or federal court prior to filing its Demand for Arbitration with the American Arbitration Association. [Demand for Arbitration at 153–54.] Instead, Defendant filed for arbitration per the terms of the October 2020 Contract and has consistently stated throughout this present litigation that arbitration was its chosen forum. *Id*. As the Third Circuit ruled in *Valli*, when the party has consistently and explicitly stated on the record that it intends to pursue arbitration, an implied waiver claim "largely collapses." 162 F.4th at 410. Here, Schneider has consistently argued in briefing that it seeks to compel arbitration. *See* [Def.'s Opp'n; Motion and Memorandum.] Thus, Willingboro's implied waiver claim "largely collapses." *Valli*, 162 F.4th at 410.

As evidence of implied waiver, Willingboro points to Schneider's Proposal, specifically where the Schneider corporate legal department did not identify the forum selection clause in the RFP as a point of issue. [Pl.'s Reply and Opp'n at 14–15;

Proposal at 137–38.] In Plaintiff's view, because Schneider did not raise an objection to the RFP's forum-selection clause when it agreed to its terms and conditions, Schneider had effectively waived its right to later pursue arbitration. *Id.*

The argument fails for two reasons. First, as the Court determined, the October 2020 Contract is a completely integrated document that supersedes all prior written communications regarding the subject area of the contract. *See supra* Section IV.A. Accordingly, conduct occurring before the parties executed the integrated agreement, and therefore before the arbitration clause was adopted, falls entirely outside the temporal window of a waiver-of-arbitration claim. Per the parol evidence rule, any communications or written documentations outside of the integrated contract no longer control the relationship between the parties. *Conway,* 901 A.2d at 346–47. There is no explicit waiver of arbitration in the October 2020 Contract; in fact, it is the exact opposite. There is a binding arbitration clause. [Contract at 147.] Second, a waiver-of-arbitration inquiry cannot begin until there is an adoption of an arbitration provision. *Greystone*, 820 F. Supp. 3d at 372 n.16. Here, the arbitration provision was not adopted until October of 2020. [*Id.* at 143.] The conduct relied upon for Willingboro's waiver-of-arbitration claim occurred in January of 2018. [Proposal at 137–38.] Thus, the only conduct relevant for the waiver-of-arbitration claim is anything occurring after October 2020, and since then, Schneider has consistently pursued arbitration. Therefore, Schneider's conduct does not constitute a waiver of its right to arbitration.

## V. CONCLUSION

For the above reasons, the Court **GRANTS** Schneider's Motion to Compel Arbitration (Docket No. 16) and **DENIES** Willingboro's Motion to Remand (Docket No. 11). The Court **DISMISSES** Willingboro's Complaint **WITHOUT PREJUDICE**.[10]

An accompanying Order of today's date shall issue.

**/s/ Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

DATED: August 4, 2026

[10] The Temporary Restraining Order (Docket No. 10) that is before the Court is denied as moot.